UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JUNIOR SMITH,<br><br>Plaintiff,<br><br>v.<br><br>STEPHANIE CLENDENIN, et al.,<br><br>Defendants. | Case No.: 1:24-cv-00791-JLT-SKO<br><br>**FIRST SCREENING ORDER** |

Plaintiff David Junior Smith, a civil detainee, is appearing pro se and *in forma pauperis* in this civil rights action.

**I.     SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners, or civil detainees, seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## II. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under

2

section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### C. Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. Cnty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other*

*grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

### III. DISCUSSION

#### A. Plaintiff's Complaint

Plaintiff names Stephanie Clendenin, Director of California Department of State Hospitals, and Brandon Price, Executive Director of Coalinga State Hospital, in their individual capacities, as defendants in this action. (Doc. 1 at 1, 5.) He seeks monetary damages, the appointment of counsel,[1] and "any other injunction the court determines is appropriate …." (*Id*. at 13.)

#### B. The Factual Allegations

Plaintiff states that while housed at Atascadero State Hospital in 2003, Drs. Goldberg and Hirsch performed certain evaluations; Goldberg found Plaintiff appeared to be "someone who has developmental disabilities" and Hirsch found Plaintiff "was at least mildly mentally retarded." (Doc. 1 at 5.) In March 2004, Dr. McCabe determined Plaintiff was "mentally retarded" following an evaluation. (*Id*. at 5-6.) In April 2004, further assessments were performed to determine the extent of Plaintiff's mental state after he expressed an interest in the Sex Offender Treatment Program (SOTP). (*Id*. at 6.) Dr. Bolin diagnosed Plaintiff with borderline intellectual functioning. (*Id*. at 6-8.) Plaintiff states that in August 2004, he was sentenced to six years in

---

[1] Plaintiff may seek the appointment of counsel by filing the appropriate motion. Plaintiff is advised that a pro se plaintiff must meet the applicable legal standards provided for in *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997).

4

1   state prison following a conviction for resisting an executive officer. (Doc. 1 at 7.)

2   In December 2008, Dr. Arnold performed a Sexually Violent Predator (SVP) evaluation,
3   noting Plaintiff's low scores in reading, math and language. (Doc. 1 at 7.) Dr. Finnberg also noted
4   Plaintiff's borderline intellectual functioning and need for a specialized SOTP. (*Id*.)

5   In May 2009, Plaintiff was admitted to Department of State Hospitals-Coalinga (DSH-C)
6   following his civil commitment as an SVP, and immediately enrolled in the SOTP. (Doc. 1 at 7.)
7   Plaintiff was enrolled in a tutorial version of the program but struggled with reading and
8   comprehension. (*Id*. at 8.) He advised his facilitators of the need for specialized tutoring or
9   special education classes but was ignored. (*Id*.)

10  In an April 2010 annual evaluation, Dr. Starrett reiterated Plaintiff's borderline intellectual
11  functioning but make no further recommendation for treatment modification. (Doc. 1 at 8.) A year
12  later, Dr. Starrett noted Plaintiff's difficulties with reading and writing and found Plaintiff
13  "should be assigned to PSR Mall groups" appropriate for individuals who struggle like Plaintiff.
14  (*Id*.) Plaintiff contends his treatment team did not implement the recommendation. (*Id*.)

15  In late 2014, Plaintiff asserts "the SOTP model changed from the Phase(s) to The Good
16  Life Model." (Doc. 1 at 9.)

17  In December 2015, Dr. Busby performed an SVP evaluation, noting Plaintiff had made
18  little progress in the SOTP. (Doc. 1 at 8-9.) While Plaintiff exhibited "more stable behavior traits"
19  after entering a domestic partnership, he still had trouble understanding concepts in the program
20  materials and required assistance from his partner. (*Id*. at 9.) Plaintiff contends a review of
21  "random chapters" in the SOTP materials reveals the grade levels assigned to those chapters
22  exceed his capabilities. (*Id*.)

23  Plaintiff next contends that although treatment team conferences occur monthly, his team
24  encouraged him to attend only quarterly. (Doc. 1 at 9-10.) A full treatment team includes a
25  psychologist, social worker, registered nurse, rehabilitation therapist, and a treatment plan
26  recorder (*id*. at 10), with the purpose of assessing a patient's program and "map[ping] out the
27  subsequent quarters treatment plan." (*Id*.) Treatment plans are broken into focuses like
28  psychology, social work, medical and recreation/leisure therapy, with a clinician assigned

accordingly. (*Id.*)

Plaintiff states that although he advised his treatment team that he was struggling to understand the SOTP materials, he was never referred to any special education or adult basic education classes to improve his reading and comprehension skills. (Doc. 1 at 10.) He contends the treatment team was unwilling to explain their reports in a manner he could understand. (*Id.*)

In 2017 or 2018, due to his frustration "with the inaction" of his treatment team and his inability to progress, Plaintiff dropped out of the SOTP and stopped attending the treatment team conferences. (Doc. 1 at 10.) Plaintiff contends his treatment team never inquired into his reasons for doing so. (*Id.*) Plaintiff asserts that due to his intellectual disability, he "employed the assistance of another patient at DSH-C" to present his claims. (*Id.*)

### C. Plaintiff's Claims

Plaintiff asserts Fourteenth Amendment substantive due process claims against Defendant Clendenin (claim one) and Defendant Price (claim two). (Doc. 1 at 10-11.) He maintains Defendants departed from professional standards and abandoned their responsibilities by denying Plaintiff adequate treatment and failing to implement educational classes required by statute. (*Id.*) As a result, Plaintiff's liberty interest "in being cured and subsequently released" were "dramatically impaired." (*Id.*)

<u>Fourteenth Amendment: Legal Standards</u>

Under the Due Process Clause of the Fourteenth Amendment, states are required to provide civilly committed individuals with access to mental health treatment that gives them a realistic opportunity to be cured and released. *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1980)); *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000) (citing *Ohlinger*). "Because the purpose of confinement is not punitive, the state must also provide the civilly-committed with 'more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.'" *Sharp*, 233 F.3d at 1172 (quoting *Youngberg v. Romeo*, 457 U.S. 307, 233 (1982)). "Lack of funds, staff or facilities cannot justify the State's failure to provide [such persons] with [the] treatment necessary for rehabilitation." *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003) (brackets in original) (quoting *Ohlinger*,

652 F.2d at 779).

Fourteenth Amendment: Analysis

Liberally construing the complaint and accepting all facts as true, Plaintiff alleges cognizable Fourteenth Amendment claims against Defendants Clendenin and Price. He contends Defendants violated his constitutional right to access mental health treatment that gives him a realistic opportunity to be cured and released because DSH-C's programming does not allow for Plaintiff's participation given his intellectual needs. *Ohlinger*, 652 F.2d at 778; *Sharp*, 233 F.3d at 1172.

### IV.   CONCLUSION AND ORDER

Plaintiff's complaint states cognizable Fourteenth Amendment due process claims against Defendants Clendenin and Price. The Court will issue a separate order regarding service of process in due course.

IT IS SO ORDERED.

Dated:   **May 2, 2025**                    /s/ *Sheila K. Oberto*
                                            UNITED STATES MAGISTRATE JUDGE